IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JIMMY LEE WHEELER,
      Plaintiff,

vs.                             Case No.: 5:16cv96/LAC/EMT

J. BAYOLO, M.D.,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jimmy Lee Wheeler, an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983.  Presently before the court is Defendant Dr. Jay Bayolo's Motion for  Summary Judgment (ECF No. 41), to which Plaintiff filed a response (ECF No. 48).  Defendant also filed a reply (ECF No. 49), to which Plaintiff also responded (ECF No. 50).  Also pending is Plaintiff's "Motion for a Judgment on Pending Motion for Recovery; For Summary Judgment" (ECF No. 39), to which Defendant has responded (ECF No. 43), as well as Plaintiff's Motion to Invoke Intervention . . ." (ECF No. 51), Proposed Order for Evaluation by a Qualified Medical Person (ECF No. 55), and "Proposed Order and Enforcement for Motion to Disclose Medical Information for Proof or Prior Related Incident" (ECF No. 56).

This case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that Defendant's motion for summary judgment should be granted.

## I.    BACKGROUND AND INTRODUCTION

At all times relevant to this action, Plaintiff was incarcerated at the Northwest Florida Reception Center ("NWFRC"). Plaintiff's claim is one of medical indifference under the Eighth Amendment proscription against cruel and unusual punishment. At the root of his medical claim is a February 15, 2014, incident in which Plaintiff states he was subjected to food poisoning from the food service at NWFRC, which caused life-threatening illness for the following days and weeks (ECF No. 9 at ¶¶6–13). Plaintiff describes the illness as a deadly disease that caused him to discharge blood to the point that he nearly bled to death (*id.*). In the longer term, Plaintiff alleges that the food poisoning has continued to exist in or influence his biological system and has resulted in painful side effects and nervous system illness (*id.* at ¶17).

In a separate lawsuit filed earlier in this court, Plaintiff claimed that he received insufficient medical treatment for the problems described above, which worsened his condition in violation of his rights under the Eighth Amendment. *See* <u>Wheeler v. Crews</u>, Case No. 5:14cv271/WS/CJK. The Defendant in the current case at bar, Dr. Bayolo, was not a defendant in the prior suit. The current case seems to represent a continuation of the previous case, and evidently it marks the first time that Defendant Bayolo became involved in Plaintiff's treatment.

In the instant complaint, Plaintiff alleges that Defendant Dr. Bayolo saw Plaintiff, evidently for the first time, at an April 5, 2016, medical appointment, more than two years after the food poisoning incident (ECF No. 9 at 9). According to Plaintiff, Defendant performed an "eyesight form of pre-evaluation" on him, and "confirmed degenerative, severe joint disease, type OA, where it eats the flesh from the joints and causes a nerve joint-related illness that gradually deteriorates the muscles of the joints" (*id.* at 9–10) (spelling and grammatical errors corrected). Plaintiff also relates that Defendant prescribed him an unspecified medication which caused "black spots" and "white pus headed bumps" to break out all over his body (*id.* at 10). Plaintiff further alleges that both of his feet were blackened on top of his big toes, which to Plaintiff was an indication of lack of blood flow to the toes (*id.* ).

While Plaintiff does not state whether he informed Defendant of this symptom, he does allege that Defendant failed to provide any treatment for it (*id.*). Plaintiff asserts that the condition of his toes is attributable to the food poisoning incident and the fact that his blood was never "purified or cleansed" (*id.* at 11). Instead, Plaintiff has been treated with topical medications such as foot powder (ECF No. 51 at 6). He states that the toes are now "subject to amputation" due to the failure of medical staff at NWFRC to essentially replace all the blood in his circulatory system.[1] Plaintiff also alleges he has experienced symptoms (or that he "lives with in fear" of those symptoms) such as "moving pains," blurred vision, dry mouth, sleepiness, abnormal involuntary movements, constipation, weight loss, lowered ability to fight off infections, increased risk of seizure, "increased risk of prolactin levels" and increased levels of glucose, cholesterol, and triglycerides (*id.* at 12). Plaintiff alleges that the only medication prescribed for him was "Pantoprazole," called "Protonic" or "Aurobindo" (ECF No. 9 at 13). Plaintiff states that this medication was designed to

---

[1] Plaintiff states that "[e]very physician or doctor and nurse employed in the medical healing business should be well aware of procedural healing factor[s] that are common to the practice of medical care; which is priority overall to clearly understand that 'Life is in the blood'; if the blood has been infected, then the life has been tainted and must be thoroughly cleansed to rid the blood of any and all 'imperfections' which Medical has yet to complete for the healing process which has left plaintiff 'irreparably injured' . . ." (ECF No. 9 at 12) (some grammatical and spelling errors corrected).

build muscle tissue for his joints, but he adds that they have not been effective (*id.*).[2]

Plaintiff states that he requested a neck brace and also a referral to a neurologist because he "knows that there's something far more seriously wrong with him than what Medical has revealed" (*id.*). Plaintiff relates that Doctor Nancy Ortiz, who evidently is employed at NWFRC as well, examined a lump on his back or spine that causes him sharp pains, and she told him not to fall or make any sudden movements with his neck as it may cause him to become paralyzed. Defendant Bayolo, however, diagnosed the lump as "nothing but fat tissue which just happens to be on my spine the size of a golf ball, which . . . is nothing to worry about" (*id.* at 14) (spelling errors corrected).

Defendant acknowledges that he saw Plaintiff on April 5, 2016. According to medical records submitted by Defendant, the reason for the appointment was the lump on Plaintiff's back and also general joint pain (ECF No. 40-1 at 59). Defendant noted atrophy on the lower cervical spine and some limited range of motion with pain in Plaintiff's cervical spine, shoulders, and lower extremities (*id.*). Defendant diagnosed Plaintiff with degenerative joint disease and polyarthralgia. Defendant

---

[2] Pantoprazole, which also goes by the brand name of Protonix, is identified as a "proton pump inhibitor" that decreases the amount of acid that is produced in the stomach and is used to treat various conditions involving excess stomach acid. *See* https://www.drugs.com/pantoprazole.html (website accessed Jan. 30, 2018).

reviewed a recent x-ray taken of Plaintiff, which he described as normal (*id.* at 123), prescribed Flexeril,[3] ordered blood work, and requested an MRI (*id.* at 59). According to Plaintiff, however, the MRI appointment was subsequently cancelled or continuously rescheduled for longer than a year (ECF No. 48 at 10).[4]

As submitted by Plaintiff, medical records from August 12 and 26, 2014, and from February 2, 2015, show that Plaintiff was diagnosed with athlete's foot, for which he was provided with antifungal ointments and powders (ECF No. 51 at 22, 24 25).  Plaintiff also submitted medical records showing that on March 9, 2015, it was noted in Plaintiff's medical log book that he complained of pain in his jaw and neck and that his "TMJ pops" on the left side.  Also noted was a small lump on his back. Plaintiff was provided with Protonix and Excedrin (*id.* at 26).  Notes from a June 16, 2015, "Periodic Screening Encounter" show that Plaintiff reported that he felt "good" other than the fact that his neck hurt (*id.* at 27).  None of these notes were signed by Defendant or indicated any involvement on his part.

---

[3]  There is no indication in the record that Defendant prescribed Pantoprazole during this appointment, and since Plaintiff even agrees that he never complained of digestive or gastrointestinal issues during the appointment (ECF No. 51 at 3–4), it seems likely that Plaintiff is mistaken as to the medication that was prescribed.  Medical records submitted by Plaintiff show that *on other occasions* he was prescribed Protonix and placed on a low residue diet (ECF No. 51 at 26, 28).

[4]  Although difficult to decipher, notations in the NWFRC chronological medical log for Plaintiff appear to show that the MRI was rescheduled—or simply requested—at least twice after the appointment with Defendant (ECF No. 40-1 at 55, 58).

After Plaintiff's lone appointment with Defendant, he filed a prison grievance regarding his medical care, which Defendant responded to on June 24, 2016, stating the following:

> Review finds evaluation of the neck well documented in the medical record. Five licensed clinicians by the State of Florida have evaluated this medical condition and determined appropriate treatment plan. Unless you have the privilege of a medical license conclusion will have to rely on the competence of the physicians. Further treatment or referral is not indicated at this time and previous x-rays have been normal. The complaint made regarding food poisoning in 2014 is vague with no facts presented. Medical treatment is found appropriate. Sick call is available for further evaluation or questions.

(ECF No. 51 at 35). On July 18, 2016, Defendant responded to another grievance Plaintiff had filed, stating:

> A review of your record reveals that your complaints have been addressed appropriately. You have been issued Flexeril on numerous occasions and have been referred for further evaluation with an MRI that is pending. Treatment is appropriate.

(ECF No. 51 at 36).

Finally, medical notes dated on December 15, 2016, identified as a follow up to Plaintiff's x-ray results, states that Plaintiff was diagnosed with cervical spine myopathy and heartburn and that he was prescribed Flexeril and Protonix and provided with a low bunk pass and a low residue diet pass. The notes were signed by Nurse Practitioner J. Whiteman (*id.* at 28).

## II.    SUMMARY JUDGMENT STANDARDS

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party

cannot create a genuine issue of material fact.  *See* Cordoba v. Dillard's, Inc., 419

F.3d 1169, 1181 (11th Cir. 2005).  "A mere scintilla of evidence in support of the

nonmoving party will not suffice to overcome a motion for summary judgment."

Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also*

Celotex Corp., 477 U.S. at 324.  The nonmoving party must either point to evidence

in the record or present additional evidence sufficient to withstand a directed verdict

motion at trial based on the alleged evidentiary deficiency.  *See* Celotex Corp., *supra*;

Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the

nonmoving party to go beyond the pleadings and by his or her own affidavits, or by

the depositions, documents, affidavits or declarations, admissions, interrogatory

answers or other materials on file designate specific facts showing that there is a

genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

    Evidence presented by the nonmoving party in opposition to the motion for

summary judgment, and all reasonable factual inferences arising from it, must be

viewed in the light most favorable to him or her.  *See* Adickes v. S. H. Kress & Co.,

398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174

F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the nonmoving party still bears the

burden of coming forward with sufficient evidence of every element that he or she

must prove.  *See* Celotex Corp., 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

## III.   DISCUSSION

In any § 1983 action, the initial inquiry must focus on whether two essential elements are present:  (1) the plaintiff was deprived of a federal right, and (2) that the deprivation was caused by a person acting under color of state law.  *See* Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed.2 d 662 (1986); Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).  It is insufficient to say that a defendant acted with negligence or committed medical malpractice, as these are not claims under the Constitution or federal law but are rather state law tort claims.  An Eighth Amendment claim of deliberate indifference requires more than negligence, even gross negligence.  Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

Plaintiff must demonstrate that Defendant acted with an attitude of "deliberate indifference." Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). The official must be consciously aware of the medical condition and the need for effective treatment and then callously or recklessly disregard it. See McElligott, 182 F.3d at 1257–58. Ordinarily, there is no constitutional violation when some measure of treatment is provided. Id. at 1259; see also Harris v. Thigpen, 941 F.2d 1495, 1504–05 (11th Cir. 1991). However, if the official knew that the present course of treatment went beyond a medical judgment call and was tantamount to no treatment at all, then an Eighth Amendment claim would exist. Id. at 1257–58.

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th

Cir. 1994).  However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.  Harris v. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)).  To do otherwise would be "to constitutionalize claims that sound in tort law."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).  Moreover, a simple difference in medical opinion between the medical staff and an inmate as to the latter's diagnosis or course of treatment does not establish deliberate indifference.  See Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (holding that the question of whether a plaintiff should have received different diagnostic tests or treatments is not an appropriate basis for grounding liability on a deliberate-indifference claim); Harris v. Thigpen, 941 F.2d at 1505; Hamm, 774 F.2d 1567, 1575 (11th Cir. 1985) (prisoner's desire for a different form of medical treatment does not constitute deliberate indifference).

Thus, while a failure to provide, or a delay in providing, needed medical treatment can constitute deliberate indifference in violation of an inmate's constitutional rights, Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), "[a]n inmate who complains that delay in medical treatment rose to

a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." <u>Townsend v. Jefferson Cnty.</u>, 582 F.3d 1252, 1259 (11th Cir. 2009).  In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 105–06 (internal quotation marks omitted); *see also* <u>Adams v. Poag</u>, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

As the record shows in this case, Plaintiff undeniably received medical treatment after his February 2014 incident where he allegedly contracted food poisoning.  *See, e.g.,* ECF No. 40-2 at 67–72.  Nonetheless, as Plaintiff evidently recognizes, this case is not directly about that incident nor the treatment that followed it, and indeed, that incident was the subject of Plaintiff's previously-filed case. However, the whole of the allegations in the instant case stems from Plaintiff's contention that he continues to suffer from symptoms that he alleges to have persisted in the aftermath of the food poisoning event, even more than two years after the fact. Plaintiff does not attack the treatment that has been provided to him for his foot, back, neck, and jaw problems *per se*; rather, he attributes his medical symptoms solely to the food poisoning and contends that nothing short of a complete replacement of the

blood in his circulatory system is the only solution to his problems. Moreover, Plaintiff would lay the responsibility for this treatment upon the Defendant doctor alone, who appears to have been completely uninvolved with Plaintiff's treatment surrounding the food poisoning incident and only became involved during a single medical appointment for what was primarily a complaint about Plaintiff's back and neck.

While the court professes no medical expertise, the medical procedure Plaintiff would prescribe appears to be a rather drastic measure, if not a far-fetched and ridiculous one, and more importantly, it is one for which Plaintiff provides absolutely no medical evidence or support. To demonstrate a viable claim of medical indifference, Plaintiff must place verifying medical evidence into the record. *See* Townsend, *supra*. Moreover, even if the alternative treatment that Plaintiff urges could be seen as more efficacious or beneficial, the failure to provide it would amount to no more than negligence (which is generally how Plaintiff describes Defendant's actions) or a difference of medical opinion, which is not sufficient to establish an Eighth Amendment violation. *See* Adams v. Poag, *supra*. The record shows that Plaintiff has clearly been provided substantial treatment during the time span of this case; his unsupported opinions about the shortcomings in that treatment are

insufficient. Accordingly, Defendant's motion for summary judgment should be granted.

Plaintiff's "Motion for a Judgment on Pending Motion for Recovery; For Summary Judgment" (ECF No. 39) should be denied. The motion is based essentially on Plaintiff's assertion that Defendant defaulted by filing a late answer to the amended complaint. Defendant initially filed a motion to dismiss instead, which serves as a responsive pleading. *See* Fed. R. Civ. P. 12(a). Defendant acknowledges that, after the court ruled upon his motion to dismiss (ECF No. 37), he was untimely in thereafter filing his answer (*see* ECF No. 38). Defendant's counsel admits to a "calendaring error" and otherwise notes that he shortly thereafter filed a motion for summary judgment, which Plaintiff has defended against (*id*.).

Because there is a strong policy in favor of resolving cases on the merits, defaults are viewed with disfavor. *See* In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316–17 (11th Cir. 2002) (describing default judgment as a "drastic remedy" and recognizing that "we must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court") (quoting Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir.1985)); *see also*

Walker v. Smokes, No.: 6:15-cv-57, 2016 WL 4099255, at *2–3 (S.D. Ga. Aug. 2, 2016) (recognizing that 42 U.S.C. § 1997e(g)(2), as part of the Prisoner Litigation Reform Act, was designed to preclude prisoner-plaintiffs from gaining defaults against defendants for failing to timely file responsive pleadings). Additionally, other than the relatively short delay that Defendant caused in this nearly two-year-old case, Plaintiff's case has not been prejudiced. *See* Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1357 (11th Cir. 2009); Fla. Physician's Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993) (recognizing that "a technical error or a slight mistake by a party's attorney should not deprive the party of an opportunity to present the merits of his claim"); Burrell v. Henderson, 434 F.3d 826, 835 (6th Cir. 2006) (finding that, without evidence of loss of evidence, increased opportunities for fraud, or discovery difficulties, delay in resolving a plaintiff's complaint is not sufficient prejudice); Lacy v. Sitel Corp., 227 F.3d 290, 293 (5th Cir. 2000) ("There is no prejudice to the plaintiff where the setting aside of the default has done no harm to plaintiff except to require it to prove its case").

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.   That Defendant Dr. Jay Bayolo's Motion for Summary Judgment (ECF No. 41) be **GRANTED**.

2.    That Plaintiff's "Motion for a Judgment on Pending Motion for Recovery; For Summary Judgment" (ECF No. 39) be **DENIED**.

3.    That all other pending motions be **DENIED** as moot.

4.    That the clerk of court be directed to enter judgment in favor of Defendant and against Plaintiff and close the file.

At Pensacola, Florida, this 5<u>th</u> day of February 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**